UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
                                        :
UNITED STATES OF AMERICA,               :      11 Cr. 699 (DLC)
                                        :
            -v-                         :      OPINION & ORDER
                                        :
JOSEPH F. SKOWRON III,                  :
                                        :
                  Defendant.            :
                                        :
----------------------------------------X

APPEARANCES:

For the Government:

Pablo Quiñones
David Massey
United States Attorney's Office
One Saint Andrew's Plaza
New York, NY 10007

For the Defendant:

Joshua H. Epstein
Sorin Royer Cooper LLC
515 Madison Avenue, 13th Floor
New York, NY 10022

For Morgan Stanley:

Kevin H. Marino
Marino, Tortorella & Boyle, P.C.
437 Southern Boulevard
Chatham, NJ 07928-1488


DENISE COTE, District Judge:

     This Opinion addresses the one remaining restitution claim

arising out of the conviction and sentencing of defendant Joseph

F. Skowron III ("Skowron").  Morgan Stanley, Skowron's former

1

employer, seeks restitution under the Mandatory Victims
Restitution Act ("MVRA"), 18 U.S.C. § 3663A, for (1) the full
disgorgement amount it paid the Securities and Exchange
Commission ("SEC") to settle SEC claims against Skowron and the
hedge funds Skowron managed; (2) legal fees and related costs
incurred responding to the government investigation of Skowron's
offense; and (3) a portion of the total compensation Morgan
Stanley paid Skowron.  Morgan Stanley's request for restitution
is granted with respect to its legal fees and related costs, as
well as to 20% of the compensation it paid Skowron in 2007-2010.
Morgan Stanley's remaining restitution request is denied.


Background

On August 15, 2011, Skowron pleaded guilty to a one-count
information charging him with conspiring to commit securities
fraud and obstruct justice.  On October 21, Morgan Stanley
submitted a victim impact statement requesting restitution for
losses incurred as a result of Skowron's offense.

Skowron was sentenced on November 18.  As stated on the
record at the sentencing hearing, and pursuant to an Order and

Judgment entered against Skowron on November 22, Skowron was ordered to pay $5,956,152.30 in restitution to five victims.[1]

At the sentencing hearing, the Court acknowledged the receipt of letters from Morgan Stanley, FrontPoint Partners LLC ("FrontPoint"), and Human Genome Sciences, Inc. ("HGSI"), each seeking restitution from Skowron.  Morgan Stanley, FrontPoint, and HGSI were given leave to submit additional letters to substantiate their restitution claims, and a briefing schedule was set to address these claims.  The Court also directed the Government to submit a letter on January 20, 2012, describing any remaining restitution disputes.[2]

Pursuant to the schedule set by the Court, Morgan Stanley submitted a letter on December 14 requesting $44,873,878.49 in total restitution from Skowron.  That sum reflected the following losses Morgan Stanley claims it suffered as a result

---

[1] These five victims were counterparties with Skowron's hedge fund on trades in which Skowron had acted on inside information.

[2] Near the end of the sentencing hearing, the Court stated:  "The restitution amount is yet to be finally determined.  I have placed on the record already the amounts that are associated with the trade counterparties. . . .  We have a schedule for determination of the remainder of the restitution that will be ordered here."  In response to a question from the Government, the Court clarified that Skowron's restitution obligation to the trading counterparties would begin immediately, but that the obligation would "not [be] imposed immediately with respect to [Morgan Stanley, FrontPoint, and HGSI] who are subject to the scheduling order that will give me fully submitted submissions on January 20, 2012, because I don't have a final amount."

of Skowron's offense conduct:  (1) $33,020,825 in disgorgement
Morgan Stanley paid to the SEC to settle an enforcement action
brought by the SEC as a result of Skowron's conduct; (2)
$3,827,052.49 in legal fees and related costs paid by Morgan
Stanley as a result of Skowron's conduct; and (3) $8,026,001
that Morgan Stanley paid to Skowron as part of his compensation
from 2007 to 2010, equivalent to 25% of Skowron's total
compensation during that period.

On January 6, 2012, Skowron submitted a letter in
opposition to Morgan Stanley's restitution request.  Morgan
Stanley made a further submission in support of its request on
January 20, and Skowron made a further submission in opposition
on January 30.  On January 20, the Government submitted a letter
indicating that HGSI had failed to pursue its restitution claims
and that FrontPoint had assigned its claims to Morgan Stanley;
accordingly, only Morgan Stanley's restitution claim remains in
dispute.

Discussion

    "The MVRA provides for mandatory restitution in all
sentencing proceedings for convictions of any offense that is,
inter alia, an offense against property under Title 18 in which
an identifiable victim or victims has suffered a pecuniary

4

loss." <u>United States v. Bengis</u>, 631 F.3d 33, 38–39 (2d Cir. 2011) (citing 18 U.S.C. §§ 3663A(c)(1)(A)(ii)–(c)(1)(B)). "Any dispute as to the proper amount or type of restitution shall be resolved by the court by the preponderance of the evidence." <u>United States v. Bahel</u>, 662 F.3d 610, 647 (2d Cir. 2011) (citation omitted).  Nobody disputes that Skowron's offense is one to which mandatory restitution applies.  Skowron and Morgan Stanley dispute, however, (1) whether Morgan Stanley is a "victim" as the term is defined in the MVRA, and therefore eligible to receive any restitution, and (2) to what extent Morgan Stanley's losses are recoverable as restitution.

I.  The Court's Authority to Order Restitution

As an initial matter, the Government raises the question whether the Court may order Skowron to pay Morgan Stanley restitution more than 90 days after Skowron was sentenced. Title 18, United States Code, § 3664(d)(5), which governs victim restitution in criminal cases, states that "the court shall set a date for the final determination of the victim's losses, not to exceed 90 days after sentencing."  18 U.S.C. § 3664(d)(5). Skowron was sentenced on November 18, 2011, and more than 90 days have passed since that date.

"[A] sentencing court that misses the 90-day deadline nonetheless retains the power to order restitution where the sentencing court made clear prior to the deadline's expiration that it would order restitution, leaving open (for more than 90 days) only the amount." United States v. Pickett, 612 F.3d 147, 149 (2d Cir. 2010) (citation omitted). Moreover, where the court explains at sentencing that it intends to leave the sentence open to gather information regarding restitution, an order of restitution issued beyond the 90 days is enforced. Id. The Supreme Court has held that § 3664(d)(5)'s 90-day deadline is the type of deadline that "seeks speed by creating a time-related directive that is legally enforceable but does not deprive a judge . . . of the power to take the action to which the deadline applies if the deadline is missed." Dolan v. United States, 130 S.Ct. 2533, 2538 (2010). Accordingly, "[t]he fact that a sentencing court misses the statute's 90-day deadline, even through its own fault . . ., does not deprive the court of the power to order restitution." Id. at 2539.

Skowron was ordered to pay restitution on November 18. The only issues left open were whether Skowron would be forced to pay restitution to Morgan Stanley, FrontPoint, and HGSI, and the amount of the final restitution award. As the Court noted at the sentencing hearing, "[t]he final amount of restitution is

6

yet to be determined."  On consent of all interested parties, a briefing schedule was set to assess the claims of the remaining potential restitution recipients and the final restitution award.  Under these circumstances, the Court retains the power to order restitution to Morgan Stanley should Morgan Stanley demonstrate that it is entitled to restitution.


II.  Whether Morgan Stanley is a "Victim" under the MVRA

A district court's "statutory authority to award restitution under the MVRA is limited to awards to victims of the offense of conviction."  United States v. Archer, --F.3d--, 2011 WL 4360013, at *16 (2d Cir. 2011).  The MVRA defines the term "victim" as

> [A] person directly and proximately harmed as a result of the commission of an offense for which restitution may be ordered including, in the case of an offense that involves as an element a scheme, conspiracy, or pattern of criminal activity, <u>any person directly harmed by the defendant's criminal conduct in the course of the scheme</u>, conspiracy, or pattern.

18 U.S.C. § 3663A(a)(2) (emphasis supplied).

Whether Morgan Stanley is a victim of Skowron's offense depends upon "whether [its] losses were caused by [the] offense" of conviction.  Archer, --F.3d--, 2011 WL 4360013, at *16.  "The necessary 'causal nexus' unquestionably exists" where the loss is "a significant part of the greater fraud" for which the

defendant was convicted.  United States v. Paul, 634 F.3d 668, 677 (2d Cir. 2011).

In Archer, for example, the Second Circuit held that clients who had made payments to a corrupt immigration lawyer convicted of visa fraud could be victims for restitution purposes, even though the conduct that caused their loss was not an element of the offense of conviction.  Archer, --F.3d--, 2011 WL 4360013, at *16.  The court held that "the clients' payments . . . were the mechanism through which [the defendant] profited from his conspiracy, and, thus, were an integral part of the single scheme he devised."  Id. at *18.  Similarly, in United States v. Bengis, 631 F.3d 33 (2d Cir. 2011), the Court of Appeals found that South Africa was a victim entitled to restitution even though the conspiracy crime to which the defendants pleaded guilty "did not involve the illegal harvesting of lobsters" in South Africa, but only their illegal importation into this country.  Id. at 40.  The court held that South Africa was directly harmed by the criminal conduct since the scheme of conviction facilitated the illegal harvesting of South African lobsters and allowed it to go undetected.  Id. at 41.

Skowron was convicted of conspiring to commit securities fraud and to obstruct an SEC investigation.  As set forth in the

Information to which Skowron pleaded guilty, the parties'
sentencing submissions, and Skowron's Pre-Sentence Report, the
conduct underlying Skowron's offense of conviction consisted of
both an insider trading scheme and an ensuing cover-up.

Skowron served as a portfolio manager for FrontPoint hedge
funds, and became a Managing Director at Morgan Stanley after
Morgan Stanley acquired FrontPoint in 2006.  In 2007 through
2008, Skowron cultivated Yves Benhamou ("Benhamou"), an advisor
to HGSI, and bribed Benhamou to provide Skowron with nonpublic
information on the results of clinical trials of an HGSI drug.
In December 2007 to January 2008, Benhamou tipped Skowron about
negative results in the clinical trials.  In the period
immediately preceding the public disclosure of the negative
results, Skowron caused FrontPoint traders to sell off
FrontPoint's significant holdings in HGSI stock, avoiding
millions of dollars in losses.

Following these trades, the SEC initiated an insider
trading investigation in February 2008.  To conceal the insider
trading scheme, Skowron and Benhamou lied directly to the SEC
and provided false information to lawyers retained by Morgan
Stanley to conduct an internal investigation in response to the
SEC investigation.  Skowron's deceit was unmasked when Benhamou
was arrested on November 1, 2010.

Skowron's offenses of conviction directly and proximately harmed Morgan Stanley.  FrontPoint, a Morgan Stanley entity, was the vehicle or "mechanism", Archer, --F.3d--, 2011 WL 4360013, at *18, through which Skowron committed his crimes.  His crimes deprived Morgan Stanley of the honest services of its employee, diverted valuable corporate time and energy in the defense of Skowron and FrontPoint, and injured Morgan Stanley's reputation. Skowron's cover-up of his insider trading was a critical component of the scheme for which he was convicted.  Morgan Stanley launched its own internal investigation and cooperated with the SEC probe.  Skowron's lies to Morgan Stanley and its investigators facilitated his deception of the SEC and were integral to that deception.  Morgan Stanley incurred substantial legal costs for itself, Skowron, and other FrontPoint employees during the SEC investigation.  Morgan Stanley is therefore a victim of Skowron's offense under the MVRA, and is eligible for restitution for its losses under that statute.

According to Skowron, Morgan Stanley suffered harm as a consequence of Skowron's offenses, but this harm materialized through "intervening events" -- the SEC investigation and investors' loss of faith in the FrontPoint funds when Skowron's fraud was eventually discovered.  Citing United States v. Archer, Skowron argues that a "victim's" losses must be "an

10

integral part of the single scheme [the defendant] devised."
Id.

Even assuming the language which Skowron emphasizes marks the outermost bounds of what it means to be a victim under the MVRA, Morgan Stanley would still qualify.  As the Information to which Skowron pleaded describes, Skowron conspired with Benhamou to trade on the inside information Benhamou provided, and then to deceive the SEC and obstruct its investigation.  Deceiving his employer, Morgan Stanley, was an integral part of Skowron's scheme.  Without that deceit, the scheme would not have been undertaken nor could it have succeeded for any period of time. The substantial costs Morgan Stanley incurred in responding to the SEC investigation, launching its own internal investigation, and providing for the defense of Skowron and other employees were a necessary, direct, and foreseeable result of Skowron's offense of conviction.


III. Morgan Stanley's Recovery

Morgan Stanley seeks recovery of three types of restitution.  It seeks the amount it paid to the SEC to settle claims against FrontPoint, certain legal fees and costs, and a portion of Skowron's compensation.

A.  SEC Settlement Payment

On or about December 2, 2011, Morgan Stanley paid the SEC $29,017,156 plus prejudgment interest of $4,003,669 for a total settlement of $33,020,825 to settle the claims brought by the SEC against Skowron and the six FrontPoint funds that were named as relief defendants.  The six funds were under the control and management of Morgan Stanley during the period covered by the Information to which Skowron pleaded guilty.  Pursuant to a corporate transaction consummated on March 1, 2011, Morgan Stanley assumed the duty to indemnify the FrontPoint funds for any settlement payment to the SEC.  In that March 1 transaction, Morgan Stanley sold its majority interest in FrontPoint back to its managers.[3]

The MVRA requires restitution where an offense has been "committed by fraud or deceit" and a victim has suffered "pecuniary loss".  18 U.S.C. §§ 3663A(c)(1)(A)(ii), 3663A(c)(1)(B).  "The primary and overarching goal of the MVRA is to make victims of crime whole, to fully compensate these victims for their losses and to restore these victims to their original state of well-being."  United States v. Qurashi, 634 F.3d 699, 703 (2d Cir. 2011) (citation omitted).  A restitution

_____

[3] The transaction agreement required Morgan Stanley to pay claims brought by any governmental entity with respect to alleged violations of the law relating to trades in HGSI, including any disgorgement penalty.

award cannot, however, "allow a victim to recover more than his due." Id. (citation omitted). The MVRA provides that, "in the case of an offense resulting in . . . loss . . . of property of a victim," the restitution order must require the defendant to "return the property" or make restitution in "the value of the property". 18 U.S.C. §§ 3663A(b)(1)(A)-(B). A victim's pecuniary losses may be considered lost "property" where the victim has been deprived of "money to which it is entitled by law." Bengis, 631 F.3d at 40 (citation omitted).

Morgan Stanley is not entitled to restitution of the amount it paid to the SEC. The amount of the SEC settlement payment represents the disgorgement of the losses that FrontPoint avoided as a result of Skowron's insider trading. This was not money that FrontPoint was legally entitled to retain. This is true as well for the interest component of the settlement payment, which reflects the time value of the money for the period prior to the settlement payment. It cannot be said, therefore, that the SEC disgorgement represented any loss of money to which FrontPoint or Morgan Stanley was ultimately entitled by law. Furthermore, reimbursement of this payment through the imposition of restitution would undermine the deterrent value of disgorgement, which is intended to deprive violators of the federal securities laws of the ill-gotten

13

gains.  See, e.g., SEC v. First Jersey Sec., Inc., 101 F.3d 1450, 1474-75 (2d Cir. 1996).

Morgan Stanley argues that the FrontPoint Funds and their investors, not Morgan Stanley, were the beneficiaries of the avoided losses.  Morgan Stanley, however, voluntarily agreed to indemnify FrontPoint for any disgorgement penalty resulting from the SEC investigation of the HGSI trades, as part of the March 2011 agreement to spin off FrontPoint to its managers.  As FrontPoint's indemnitor, Morgan Stanley effectively stands in FrontPoint's shoes.  There is no question that the losses avoided by FrontPoint represent ill-gotten gains which it is not entitled by law to retain.

Morgan Stanley also argues that even if it is not entitled to restitution of the SEC disgorgement pursuant to 18 U.S.C. § 3663A, the court should order restitution pursuant to 18 U.S.C. § 3664(j)(1).  Section 3664(j)(1) provides:

> If a victim has received compensation from insurance or any other source with respect to a loss, the court shall order that restitution be paid to the person who provided or is obligated to provide the compensation, but the restitution order shall provide that all restitution of victims required by the order be paid to the victims before any restitution is paid to such a provider of compensation.

18 U.S.C. § 3664(j)(1).  The reach of § 3664(j)(1) is limited to those who provide compensation to victims of the offense for

14

which restitution is ordered.  See, e.g., United States v. Douglas, 525 F.3d 225, 253-54 (2d Cir. 2008); United States v. Malpeso, 126 F.3d 92, 95 (2d Cir. 1998).

Morgan Stanley made a voluntary business decision to indemnify FrontPoint for any disgorgement due to the SEC in connection with the HGSI trades, with full knowledge of the SEC claims against FrontPoint.  Thus, this sum represents money paid to the SEC and not a sum paid to compensate a victim who is entitled to restitution under the MVRA.[4]  Morgan Stanley is not eligible for restitution under § 3664(j)(1).

B.  Attorney's Fees and Costs

Morgan Stanley seeks restitution of $3,827,052.49 it has spent in legal fees and related costs for the following purposes: to interact with the SEC and Department of Justice ("DOJ") during their investigations of Skowron, and to conduct its own internal investigation ($2,384,577.31); to pay the legal fees and costs of FrontPoint portfolio managers and employees other than Skowron in connection with those investigations

---

[4] The SEC has agreed to contribute money it has collected through its litigation of the FrontPoint insider trading claims to the Fair Funds process established in conjunction with the related private civil litigation.  It is unclear at this point how much of the disgorgement penalty will ultimately be paid to any victim shareholders.  In any event, the fact that Morgan Stanley's disgorgement payment to the SEC may ultimately benefit shareholders does not alter the conclusion that Morgan Stanley has paid it to the SEC and not to the victims.

($685,366.57); and to pay Skowron's defense costs during the period in which he maintained his innocence ($757,108.61).  The MVRA requires a defendant to reimburse a victim for "necessary . . . other expenses incurred during participation in the investigation or prosecution of the offense or attendance at proceedings related to the offense."  18 U.S.C. § 3663A(b)(4).  "Other expenses" includes attorneys' fees and accounting costs. United States v. Amato, 540 F.3d 153, 159 (2d Cir. 2008).

As an initial matter, Morgan Stanley is entitled to restitution for the legal fees and related costs it incurred in cooperating with the SEC investigation of the HGSI trades and in launching its own internal investigation.  Lying to his employer was integral to Skowron's scheme to deceive the SEC.  Morgan Stanley's extensive legal and investigative costs during the period Skowron maintained his innocence were directly and foreseeably caused by Skowron's conspiracy to obstruct justice. These costs are therefore the proper subject of a restitution order.  Bahel, 662 F.3d at 647 (legal fees incurred by defrauded employer); Amato, 540 F.3d at 161 (attorneys' fees incurred during investigation of offense); United States v. Scott, 405 F.3d 615, 619-620 (7th Cir. 2005) (auditing costs incurred by defrauded employer).  By the same token, Morgan Stanley was legally and contractually obliged to advance legal fees to

16

Skowron and other FrontPoint employees during the period in which Skowron misled the SEC.  Morgan Stanley's costs in doing so flowed directly from Skowron's obstruction scheme, and Skowron must make restitution of these amounts.

Skowron argues that an MVRA restitution award cannot consist solely of legal fees awarded pursuant to § 3663A(b)(4). According to Skowron, Morgan Stanley must establish it is a "victim" independent of the legal costs it incurs and must show that the harm it suffered, independent of the legal expenses it paid, was directly and proximately caused by the offense of conviction.

As discussed above, Morgan Stanley is a victim because it was directly and proximately harmed by Skowron's scheme in a variety of ways.  Having determined that Morgan Stanley qualifies as a victim under the MVRA, it is entitled pursuant to § 3663A(b)(4) to reimbursement of "other expenses" including attorneys' fees.

Skowron next argues that even if Morgan Stanley is a victim, it is at most entitled to $788,561.07.  That sum represents the money Morgan Stanley paid to its attorneys at Wiggin and Dana in connection with the Government's criminal investigation.  Skowron contends that § 3663A(b)(4) only permits reimbursement of expenses incurred during the investigation of

the criminal case, and that such expenses did not accrue until October 26, 2010, just days before the November 2, 2010 arrest of Benhamou.

Morgan Stanley's expenses associated with the SEC investigation of his insider trading scheme are encompassed by the MVRA.  Section 3663A(b)(4) permits restitution of a victim's expenses "related to participation in the investigation . . . of the offense."  18 U.S.C. § 3663A(b)(4).  It is undisputed that the offense of conviction included insider trading and that the SEC investigation focused on whether Skowron and FrontPoint engaged in insider trading in connection with the January 2008 HGSI trades.  As frequently occurs, when the SEC uncovered sufficient evidence of insider trading, the United States Attorney's Office filed parallel criminal charges.  The criminal prosecution of Skowron for securities fraud rested on essentially the same conduct as the SEC's civil case -- except that the criminal prosecution also incorporated charges that Skowron had conspired to obstruct the SEC investigation.  In the circumstances, Morgan Stanley's expenses incurred in connection with the SEC investigation of the conduct underlying the offense on which Skowron was convicted may be recovered through a restitution order.

18

Any other conclusion would create an artificial and unrealistic distinction between SEC civil investigations and criminal prosecutions of securities fraud.  The SEC is the agency charged with enforcement of this nation's securities laws.  See Official Comm. of Unsecured Creditors of WorldCom, Inc. v. S.E.C., 467 F.3d 73, 84 (2d Cir. 2006).  These laws carry civil and criminal penalties.  Particularly in this district, the cases are legion where parallel civil investigations and criminal prosecutions of securities fraud target the same wrongdoers.  Indeed, it is because of the likelihood that criminal charges will be filed as a result of information uncovered in a civil SEC investigation that there is a market in this city for sophisticated counsel who are competent to represent clients before both fora, protecting a subject's criminal rights while defending against a civil investigation.  The fact that Skowron was arrested and indicted for conduct that was the focus of an SEC investigation is utterly unsurprising.

United States v. Levis, No. 08 Cr. 181 (TPG), 2011 WL 497958 (S.D.N.Y. Feb. 10, 2011), cited by Skowron, presented the court with a different situation.  There, the defendant's employer sought restitution of its legal costs in responding to an SEC investigation of a financial restatement and in

19

conducting its own internal investigation.  The court denied the employer restitution of those costs because the investigations arose out of circumstances essentially independent of the conduct underlying the defendant's conviction.  Id. at *2.

Skowron's argument that Morgan Stanley is not entitled to restitution for the legal fees it advanced to Skowron (while he maintained his innocence) and other FrontPoint employees because these advances were not "necessary" is likewise without merit. Morgan Stanley was contractually obligated to indemnify its employees under these circumstances.  Moreover, the fact that Morgan Stanley may also have recourse through state law to recoup the legal fees it advanced to Skowron based on Skowron's deception cannot forestall operation of the MVRA's mandatory restitution provisions.

C. Skowron's Compensation

Finally, Morgan Stanley seeks 25% of the compensation Skowron was paid from 2007 through 2010.  Morgan Stanley may recover 20% of Skowron's compensation during that period, or $6,420,801.  This represents "a conservative estimate of the cost of the fraud with respect to his" compensation.  Bahel, 662 F.3d at 650.

Morgan Stanley acquired FrontPoint in December 2006, and Skowron began cultivating Benhamou as a source of information in

20

April 2007.  The illicit trading occurred in December 2007 through January 2008.  Shortly after Benhamou was arrested on November 2, 2010, FrontPoint liquidated its healthcare funds due to massive investor redemptions.  Morgan Stanley asserts that it would have fired Skowron immediately if it had known the truth about his criminal conduct in January 2008, and the funds would likely have been closed promptly thereafter.

Morgan Stanley argues that the compensation it paid Skowron between 2007 and 2010 represents a loss caused by Skowron's efforts to obstruct the SEC investigation.  Moreover, Morgan Stanley also argues that it is entitled to restitution of a portion of Skowron's total compensation because Skowron was a faithless servant.

The MVRA requires restitution of the value of a victim's property.  18 U.S.C. § 3663A(b)(1).  Money paid in salary is property.  Bahel, 662 F.3d at 648-49.  "[A] portion of an individual's salary can be subject to forfeiture where, as here, an employer pays for honest services but receives something less."  Id. at 649.  To be recoverable, however, the salary or other compensation must be "obtained as a result" of the offense of conviction.  Id.  This occurs when the criminal scheme either permitted the defendant to obtain his position or included "a significant pattern of honest services fraud."  Id.  Repayments

of 10% to 25% of compensation have been approved in such circumstances.  Id. at 650.

As already described, Morgan Stanley is a victim of Skowron's offense under the MVRA.  As such, "in the case of an offense resulting in damage to or loss or destruction of [Morgan Stanley's] property," it is entitled to "return [of its] property. . . ."  See id. at 649 (citing 18 U.S.C. § 3663A(b)(1)(A)).  Morgan Stanley paid Skowron compensation in the expectation that it would receive his honest services.  Part of that expectation was that Skowron would abide by policies established by FrontPoint and Morgan Stanley that, as noted in the Information, prohibited insider trading.[5]  In direct contravention of those policies, Skowron caused FrontPoint to sell off its HGSI holdings on the basis of inside information provided by Benhamou.

Moreover, Skowron's deception of Morgan Stanley formed an integral part of his scheme to obstruct the SEC investigation, and prolonged that investigation by nearly two years.  Skowron actively deceived Morgan Stanley and frustrated its internal

---

[5] Employers establish and disseminate such policies not merely to protect their employees.  If an employee does engage in insider trading, it is almost inevitable that the employer will become entangled in any subsequent official investigation.  Even if exonerated, the employer's legal fees and investigative costs may be enormous, as well illustrated by Morgan Stanley's experience in this case.

investigation and its attempts to cooperate with the SEC.  This
conduct had the effect of prolonging the period during which
Skowron received generous compensation from Morgan Stanley; if
Morgan Stanley had learned at an earlier date that Skowron had
engaged in insider trading, it would have terminated his
employment then.

Under these circumstances, some portion of Skowron's
compensation is recoverable under the MVRA.  Bahel, 662 F.3d
610, is instructive.  Bahel, a former procurement officer at the
United Nations ("U.N."), was ordered to pay restitution of a
portion of his salary to the U.N. after his fraud conviction.
Bahel had accepted bribes in exchange for directing U.N.
contracts to co-conspirators.  Id. at 620-21.  In affirming the
restitution order, the Second Circuit noted that "the money the
U.N. paid in the form of [Bahel's] salary was plainly 'property'
that belonged to the U.N., at least some of which the U.N. lost
as a result of Bahel's offense, since the U.N. paid him for his
honest services, which is what he failed to provide."  Id. at
648-49.

Skowron manifestly failed to provide the honest services
for which Morgan Stanley compensated him.  To the contrary, the
tangible and intangible costs to Morgan Stanley of Skowron's
offense were great:  millions of dollars in legal fees and

related costs, massive investor redemptions on the FrontPoint funds, the closing of these funds, and a tarnishing of Morgan Stanley's reputation.

Skowron makes several arguments for why Morgan Stanley is not entitled to restitution of a portion of his compensation. First, Skowron argues that Morgan Stanley must show that its losses were "proximately caused by [Skowron's] offense", see United States v. Aumais, 656 F.3d 147, 153 (2d Cir. 2011), and that Morgan Stanley cannot do so with respect to any portion of Skowron's compensation because Skowron's "compensation arose from an employment agreement, and thus an entitlement, that was independent of the wrongdoing." Aumais, however, interpreted statutory language in the Mandatory Restitution for Sexual Exploitation of Children Act, 18 U.S.C. § 2259, not the MVRA. Aumais, 656 F.3d at 152.  Like the defendant in Bahel, an MVRA case, Skowron's compensation did arise from an employment agreement.  But restitution remains necessary for that portion of Skowron's compensation representing the difference in value between the honest services Morgan Stanley paid for and what it actually received.  As in Bahel, that loss of property was proximately caused by Skowron's offense.

Next, Skowron argues that cases in which defendants were ordered to return a portion of their compensation as restitution

24

all involved convictions for honest services fraud, where "the crime itself was about hurting the employer by not doing the job required."  By the same token, Skowron argues that his scheme was directed at investors and the SEC, not Morgan Stanley.

The limitations Skowron seeks to place on restitution available under the MVRA are not supported by that statute's text.  As discussed above, Morgan Stanley is a "victim" of Skowron's offense, as that term is defined in the MVRA.  Because Skowron's offense "result[ed] in . . . loss . . . of [Morgan Stanley's] property," 18 U.S.C. § 3663A(b)(1), Skowron must "return the property."  Id. § 3663A(b)(1)(A).  Skowron's insider trading and obstruction schemes deprived Morgan Stanley of honest services for which it paid.  Under the MVRA, therefore, Morgan Stanley is entitled to restitution for its losses.

Skowron also argues that Morgan Stanley cannot demonstrate that any portion of Skowron's compensation was linked to his insider trading, or substantiate that his services were worth less than what Morgan Stanley paid for them.  But it is undisputed that Morgan Stanley paid Skowron for honest services, and that Morgan Stanley received "something less."  Bahel, 662 F.3d 649.  Under similar circumstances, courts have awarded between 10% to 25% of the defendant's compensation to the employer, representing "the difference in the value of the

25

services that [the employee] rendered [the employer] and the value of the services that an honest [employee] would have rendered." Id. (citing United States v. Sapoznik, 161 F.3d 1117, 1121 (7th Cir. 1998)).

Finally, Skowron argues that allowing Morgan Stanley to recover a portion of his compensation would "create an extremely broad rule . . . allow[ing] restitution to an employer in any case in which a defendant's fraud against another would have been grounds for termination by that employer." Restitution of a portion of Skowron's compensation would create no such sweeping rule. Skowron's employment with Morgan Stanley was at the core of the conduct underlying his conviction. His employment with Morgan Stanley gave him the opportunity and mechanism to violate the securities laws. Moreover, Skowron required a complex and prolonged scheme to deceive Morgan Stanley if he were to deceive the SEC during its investigation. In any event, a restitution order under the MVRA must comply with the language of that statute. Allowing Morgan Stanley to recover a portion of the compensation it paid Skowron fits squarely within the statutory language and Second Circuit precedent interpreting it.

Given the scale of Skowron's fraud, the severity and length of his deception, and the impact on Morgan Stanley, the Court

finds that restitution of 20% of Skowron's total compensation in the years 2007-2010 approximates the difference in value between the honest services for which Morgan Stanley paid and what it received as a result of Skowron's offense.  Because Skowron's total compensation between 2007 and 2010 was $32,104,005, Skowron must pay restitution to Morgan Stanley in the amount of $6,420,801.

In ordering Skowron to pay 20% of his total compensation as restitution, the Court is mindful that this figure represents an approximation of Morgan Stanley's loss in connection with the compensation it paid Skowron -- and that Morgan Stanley believes it is entitled to even more.  But a court may order restitution approximating the value of the deprived honest services where, as here, attempting to calculate the employer's precise loss would force the court into unduly burdensome calculations. Bahel, 662 F.3d at 650; Sapoznik, 161 F.3d at 1121-22.


Conclusion

Morgan Stanley's request for restitution from Skowron of $3,827,052.49 in legal fees and related costs is granted.  Its request for restitution from Skowron in connection with Skowron's compensation is granted as to 20% of Skowron's total

27

compensation, or $6,420,801.  Morgan Stanley's remaining

restitution request is denied.

SO ORDERED:

Dated:     New York, New York
           March 20, 2012

_____
           DENISE COTE
     United States District Judge